## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. Stephen Brown, a single Individual | ) | |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | Case No. 5:18-cv-00902-R |
| | ) | |
| 2. Elephant Talk North America Corporation, | ) | |
| | ) | |
| - AND - | ) | |
| | ) | |
| 3. Elephant Talk Communications Corp., | ) | |
| | ) | |
| 4. Pareteum Corporation, successor in interest | ) | |
| | ) | |
| Defendants | ) | **ATTORNEY LIEN CLAIMED** |

### FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, and, allege and state as follows:

### JURISDICTIONAL MATTERS

1. Plaintiff Stephen Brown is a resident of Oklahoma County, Oklahoma.

2. Defendant Elephant Talk North America Corporation, is a Delaware Corporation ("ETNA") owned and operated by Elephant Talk Communications Corp. (listed on the exchange under the ticker "ETAK"), and registered to do business in the State of Oklahoma. ETNA and ETCC operated together and jointly with regard to the allegations of this petition and Steven van der Velden operated as CEO of each Company. At all times relevant, Defendant's principal office in the United States of America was at 9705 N. Broadway Ext, Suite 200, Oklahoma City, OK 73114 and 3600 NW 138th St STE. 102 Oklahoma City, OK 73134. Currently, ETNA's principal place of business in in New York City. Elephant Talk North America Corporation changed its name and does business as Pareteum North America. For all purposes herein Defendant Pareteum North America shall be referenced herein as ETNA.

1

3. ETCC, is a corporation organized under the laws of the State of Delaware with its principal place of business in New York, New York, maintained its corporate office in Oklahoma City up to 2015, and is a party to the Purchase Agreement. ETCC made a joint promise regarding compensation to Plaintiff pursuant to 15 Okla. Stat. § 175, and is therefore a party to this action. Alternatively, ETCC is the real party in interest, and ETNA is an Alter Ego of ETCC. Alternatively, ETNA is an instrument of fraud and a device created by ETCC to avoid the consequences of its improper, fraudulent and illegal conduct in the State of Oklahoma and the United States of America. Elephant Talk Communications Corp. (ETCC), effected a name change, effective November 1, 2016, to Pareteum (TEUM) who operates from 1185 Avenue of the Americas, New York, New York 10036. For all purposes herein the Defendant Pareteum shall be referenced herein as ETCC.

4. The parties entered into written employment agreements titled: 1) "Consultancy Agreement for a Definite Period of time" ("Consultancy Agreement") **[Exhibit 1]** and 2) "Side Letter to the Consultancy Agreement for a Definite Period of Time" ("Side Letter") **[Exhibit 2]**. (Together these two agreements are referenced herein as the "Agreement").

> "In the event of inconsistency between the APA, the Consultancy Agreement, or this Side Letter the terms of the Side Letter shall prevail in the first instance and thereafter the APA will be considered definitive." *Exhibit 2: Side Letter, Bullet Point 4, page 1 of 2 pages.*

> "This Side Letter is subject to the laws of the state of Oklahoma without regard to any choice of law argument" *Exhibit 2: Side Letter, Bullet Point 4, Page 2 of 2 pages.*

5. The Defendant solicited the employment of the Plaintiff, and drafted the employment Agreement without any negotiation from Plaintiff. The employment consulting was based from Defendant's global headquarters office in Oklahoma City, and the contract was to be performed in Oklahoma.

6. This Court has jurisdiction and venue is proper in the United States District Court pursuant to 28 U.S.C. §1332 for the Western District of Oklahoma which is the residence of Plaintiff who is a citizen of Oklahoma, and all Defendants are foreign Corporations with citizenship in New York. The events giving rise to the compliant occurred in the State of Oklahoma and in Oklahoma City. The Contracts were to be performed in Oklahoma. The amount in Controversy is in excess of $75,000.00.

## FACTUAL BACKGROUND

7. On or about April, 1 2013, both Defendant ETNA and its parent company ETCC entered into an asset purchase agreement ("APA") to purchase the assets of Telnicity, LLC, an Oklahoma Limited Liability Company, with its primary offices located at 9705 N. Broadway Ext, Suite 200, Oklahoma City, Oklahoma County, Oklahoma. ("Telnicity") Plaintiff was a consultant to Telnicity prior to the APA.

8. Telnicity's business assets and operations became the sole initial source of operations in North America for ETCC, through its wholly owned subsidiary Defendant ETNA.

9. Telnicity and ETNA's primary business is providing wireless advice and services in relation to U.S. based wireless carriers, networks, phones and wholesale operations.

10. Around this same time, ETNA was formed as a Delaware Corporation, and began operation as the Head Quarters for ETNA in the United States.

11. Defendant approached Plaintiff, an acknowledged key person with regard to Telnicity, and offered employment as an operations and finance expert. Plaintiff, based on the terms offered, intended and expected to make ETNA his sole employer, and divest from his unrelated business once the ETNA work initiated.

12. On or around February 17th, 2013, the parties executed Consultancy Agreement and Side Letter (together "Agreement"). The terms of the Side Agreement prevail over conflicting

terms of the Consultancy Agreement pursuant an express provision of the Side Agreement (*See* Exhibit 2: Side Agreement, Page 1, Bullet Point 4).

13. In the course of the negotiation of the APA, it was fully and openly disclosed to Defendant and ETCC, both by Plaintiff, as well Telnicity, that Plaintiff was the owner of an outside fast food franchise unrelated to his full time work for Telnicity. The franchise did not and has never competed in any way with Telnicity or the Defendant.

> "Working hours are flexible, but Consultant [Plaintiff] is expected to work full time and exclusively for Principle or its affiliates" [Exhibit 1: Consultancy Agreement, Bullet Point 7, Page 1 of 6]
>
> "Parties agree to a fixed fee of US$ 13,625 per month. A 1099 form shall be issued to Consultant for these fees" [Exhibit 1: Consultancy Agreement, Bullet Point 1, Page 2 of 6]
>
> "Payment of invoices shall be done within 14 days after receipt of the invoice" [Exhibit 1: Consultancy Agreement, Bullet Point 3, Page 2 of 6]
>
> "For eligibility of commission to apply, it has been agreed in the Asset Purchase Agreement of January 8, 2013 between Telnicity, LLC at one hand and Elephant Talk North America and Elephant Talk Communications Corp. on the other hand. The content of the agreed [sic] is well known to the parties. [Exhibit 1: Consultancy Agreement, "Commission Structure", page 2 of 6.]
>
> "At the Principals discretion, principal reimburses staff when additional expenditure over and above the ordinary cost of living is wholly, necessarily and exclusively incurred in the performance of company business, in accordance with its policies. Any staff member (being employee or consultant) is expected to limit expenses as much as possible; ... [Exhibit 1: Consultancy Agreement, "Expenses", page 2 of 6]
>
> "The Consultant shall not be permitted to accept or negotiate, whether directly or indirectly, for its or his/her personal benefit any commission, advantage or gain, in any form or under any name whatsoever, from customers or suppliers of the Principal or any of its subsidiaries or affiliated companies or the Principal's parent company, **except that Consultant remains free to do business with those persons which are the Consultants own customers (independent of this Consultancy agreement) and in such cases only in connection with the Consultant's independent (and non competing) business.**
>
> "Should the Consultancy Agreement be terminated by the Principal for any reason other than (a) any serious or persistent committed breach of any of the obligations under the Consultancy Agreement by the Consultant or (b) non-performance,

4

> *Principal will pay out the remaining term of the contract to the Consultant"* [Exhibit 1: Consultancy Agreement, "General" Bullet Point 4, Page 6 of 6]
>
> *"This Consultancy agreement is subject to the laws of the state of Oklahoma without regards to any choice of law argument"* [Exhibit 1: Consultancy Agreement, "General" Bullet Point 5, Page 6 of 6]

14. The fast food franchise owned by Plaintiff is in no way providing advice or services in relation to U.S. based wireless carriers, networks, phones or wholesale operations. Rather, the Franchise provides fried chicken and various prepared food items to mall patrons in a single mall in Oklahoma City, Oklahoma. The ownership of the fast food franchise was the only stated grounds for "suspension" by Defendants.

15. The ownership of the Plaintiff's franchise has not, did not, and does not prevent or limit the Plaintiff's ability to perform full time work in the consulting. Plaintiff has, at all times relevant, hired full time managers and employees to operate the franchise. Plaintiff performed full time services for Defendant in compliance with the Agreement.

16. The Agreement provided for the agreement to commence on closing date of the APA, which was anticipated to be March 1, 2013, and shall continue for a period of five years:

    > *"Of particular importance to Principal [Defendant ETNA] is that Consultant remains engaged, as a consultant and in any case in total for at lease five (5) years after closing."* (See Side Letter, Page 1, Bullet point 2)

17. The Express terms of the Side Agreement provide:

    > *"Should the Consultancy Agreement be terminated by the Principal [Defendant ETNA] for any reason other than (a) any serious or persistent committed breach of any of the obligations under the Consultancy Agreement by Consultant or (b) non-performance, Principal will pay out the remaining term of the contract to consultant.*

18. The Agreement provides for a fixed fee in the amount of THIRTEEN THOUSAND SIX HUNDRED TWENTY FIVE DOLLARS ($13,625.00) per month in United States currency.

19. The Agreement, on its face, provides for total base compensation over sixty months of EIGHT HUNDRED SEVENTEEN THOUSAND AND FIVE HUNDRED DOLLARS ($817,500.00) ("Base Compensation") over its five year term.

20. The Agreement further provides for Commission to be paid in addition to the Base Compensation calculated pursuant to specific provisions contained in the APA. The provisions of the APA for such commission are incorporated in the Agreement for this purpose.

21. The Agreement further provides for expense reimbursement to be paid to Plaintiff for business expenses.

22. Plaintiff provided full time services beginning January 8, 2013 and continued up until January 31, 2014, at which time Defendant ETNA "suspended" Plaintiff, with no explanation, other than the chicken franchise somehow violated the consulting agreement, and with no response to Plaintiff's request to clarification as to Plaintiff's pay status. Plaintiff signed the Agreement in February having already worked for approximately one month, been under the control and direction of Defendants, and having been issued Defendants' business cards and operating as Defendants' employee.

23. At the time of Defendant ETNA's 'suspension' of Plaintiff, Plaintiff's total wages earned was One Hundred Seventy Three Thousand Six Hundred and Twenty Seven Dollars and 42/00 ($173,627.42) for January 8, 2013 though January of 2014. Of this amount, One Hundred Forty Nine Thousand Eight Hundred and Seventy Five Dollars ($149,875.00) was earned and owing under written contract. At that time Plaintiff had received only the sum of Thirty Seven Thousand Five Hundred Dollars ($37,500.00), which was paid late. As such, on the date of "suspension" Plaintiff was owed back wages in the amount of One Hundred Thirty Six Thousand One Hundred Twenty Seven and 42/100 Dollars

($136,127.42) Plaintiff has not received, and Defendant has refused to pay back wages accrued and owing.

24. During the time of the accumulation of back wages, Defendants, through its officers and its agents made constant and continuous excuses for non-payment and numerous promises of pending payment.  Steven van der Velden, CEO, Chairman of the Board and President of Elephant Talk Communications Corporation and Michael Hagens gave assurances to Plaintiff that the accruing wages would be paid in full.  Promises to pay were verbal as well as in writing.  The Board of Directors of the ETCC issued a direction that Plaintiff was to be paid.  Mr. van der Velden, as was his common practice, attempted to renegotiate the Plaintiff's contract after Defendant's nonperformance, and use the financial impairment caused by Defendant's nonperformance to its advantage and benefit.

25. For the period beginning upon commencement of employment as a consultant, and until the present, Defendant has failed and refused to reimburse the business expenses incurred and paid by Plaintiff in the course of such employment as a consultant.  These payments were promised regularly and verbally and in writing.

26. For the period beginning upon commencement of the Agreement, and until the present, Defendants have failed and refused to pay any commission as required under the APA as referenced and incorporated in the Agreement.

27. Defendant ETNA terminated the Agreement without good cause, suspended employment of Plaintiff as a Consultant and ceased paying wages in violation of the express terms of the Side Agreement.   Defendant never paid back wages then owed or business expense reimbursement for Defendants' business expenses paid up to that time.

28. Plaintiff performed all duties required under the agreement up to the time the Defendant ETCC suspended the Agreement.

29. Defendant acted throughout the term of the Agreement, in bad faith and with malice toward Plaintiff.

30. Steven van der Velden on behalf of ETCC and Dane Gasio, on behalf of ETNA, having executed the APA, and seized the assets, intellectual property and operations of Telnicity, including intellectual property created by Plaintiff, entered into the Agreement with no intention to comply with the terms of the Agreement, including assets, operations and intellectual property requiring the payment of a commission to Plaintiff.

31. Defendants, through their employees, agents and attorneys, have harassed, tormented and threatened Plaintiff.

32. Defendants, through its employees, agents and attorney Rubinstein attempted to suborn perjury by Plaintiff shortly before his "suspension". Defendants, by and through their employee Michael Hagen, at this time, threatened non-payment of back wages, non payment of reimbursable expenses, an attack on Plaintiff's character, damage to Plaintiff's financial well-being, unwarranted litigation, and the loss of Plaintiff's outside, unrelated, and non-competing franchise.

33. Defendants, through their employees, agents and attorneys, have openly and intentionally scattered false, libelous and misleading documents in public so as to create false, libelous, or misleading impressions of the Plaintiff with his neighbors, members of the community and the public.

34. The CEO of Defendant ETCC, Van der Velden, openly and pointedly stated that ETCC never had any intention to comply with the terms and provisions of the Agreement with Plaintiff.

35. Defendants have made no attempt to comply, settle or compensate Plaintiff at any time relevant.

36. During dates notated, Plaintiff made contact with members of the board of directors asking them to compel the Defendant CEO to honor the consulting agreement and pay past due amounts.  It was determined by the board of directors that the agreement was to be honored and the CEO agreed to make the payments but never followed through by paying compensation to Plaintiff even after the direction of the board of directors.  The CEO did not pay Plaintiff, but did pay others, and used numerous false, deceptive and dishonest excuses as to why the payments ordered by the Board where never made to Plaintiff.

**FIRST CAUSE OF ACTION:  BREACH OF CONTRACT**

37. The allegations of Paragraphs 1 through 36 of Plaintiff's Petition are hereby incorporated herein by this reference, and each as if fully set forth herein.

38. The parties entered into a valid Agreement to hire the consulting services of Plaintiff, including in its terms provisions for confidentiality, non-compete and non-solicitation as consideration for employment and pay;

39. Plaintiff, at all times relevant, performed all services and requirements of the Agreement;

40. Defendant ETNA has failed and refused to pay Plaintiff as agreed under the Agreement;

41. Defendant ETCC has failed and refused to pay commission to Plaintiff as agreed under the Agreement;

42. Defendants ETNA AND ETCC have failed and refused to pay Plaintiff reimbursements for Defendants business expenses as required and agreed under the Agreement;

43. The Agreement expressly requires payment for the full term of the Agreement unless the Agreement is terminated for cause;

44. Defendant ETNA's 'suspension' without just cause does not relieve Defendant of its duty to continue to pay Plaintiff the fixed fee owed pursuant to the Adhesion Contract drafted by Defendants ETCC and ETNA;

45. The Defendants acts and omissions constitute breach of the Agreement;

46. Defendant ETNA's refusal to pay amounts owed under the Agreement constitute breach of the Agreement;

47. Defendants actions and omissions constituting breach of contract have harmed and damaged the Plaintiffs' in excess of $780,000.00 in unpaid wages, lost wages, lost commissions and unreimbursed business expenses.

**SECOND CAUSE OF ACTION: ITENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

48. The allegations of Paragraphs 1 through 47 are hereby incorporated herein by this reference, and each as if fully set forth herein.

49. Defendants' actions and omissions were *intentional*, *wreckless* and malicious;

50. Defendants' failure to pay amounts owed for labor performed created extreme, *outrageous* and unjustified financial hardship on Plaintiff, and Defendant's false statements of pending payment prolonged and exacerbated Plaintiff's suffering.

51. Defendants' use of their attorneys to harass, badger, threaten and intimidate Plaintiff was *intentional* and expressly intended to create fear, apprehension and concern in the Plaintiff and his close relations;

52. Defendants' use of agents, employees and attorneys to intimidate, coerce, and badger Plaintiff was *extreme*, unlawful, prolonged and outrageous;

53. Defendant's actions and omissions did in fact create fear, intimidation, and emotional damage to Plaintiff, and created *outrageous* financial hardship which itself created *severe*

*and debilitating* emotional consequence. Plaintiff has paid for medical treatment and been diagnosed with depression, and continues treatment and medical care. Defendants prolonged and exacerbated tortious conduct was extreme, *outrageous* and shocks the conscience;

54. ETNA's, by and through the control of ETCC, actions and omissions constituting Intentional Infliction of Emotional Distress have harmed and damaged the Plaintiffs' in excess of $10,000.00.

**THIRD CAUSE OF ACTION: ACTUAL AND CONSTRUCTIVE FRAUD**

55. The allegations of Paragraphs 1 through 54 are hereby incorporated herein by this reference, and each as if fully set forth herein.

56. The Defendants, continuously from the time of the execution of the APA until the termination of Plaintiff, gave false, untrue and deceitful assurances of pending or forthcoming payments to induce Plaintiff (and others) to continue employment under the Agreement. Plaintiff regularly and continuously communicated with Defendants and his superiors regarding the issues with pay and failure to pay amounts owed. In fact, it was revealed a few months later that Defendant ETCC did not have or allocate sufficient money to pay for the operations during the time the APA and Agreement were signed, or for months thereafter. ETCC controlled and dominated every respect the operations of ETNA, including controlling all bank accounts and transactions. Even when Defendant ETCC eventually transferred some funds, the amounts were woefully insufficient to pay all Defendant ETNA's outstanding contractual obligations due at the time of transfer, and the transfer occurred only when those obligations were seriously delinquent.

57. The Defendant ETCC's and ETNA's demonstrably false assurances and promises to Plaintiff and others that Defendant ETCC would pay operating expenses, including past

due wages to prolong cooperation with key persons, including Plaintiff, involved with Telnicity. Such payments were either never made at all, or never made in the amounts promised, and never made in a timely fashion;

58. Defendant's utilized the time, efforts and cooperation of unpaid or underpaid employees, including the Plaintiff, to facilitate the conversion of Telnicity's assets, relationships and intellectual property to profitable use by Defendants without compensation;

59. Defendant ETCC provided funds to pay (and partial pay) to some key individuals and employees by directing those persons engage specified actions, including opening certain bank accounts, but Plaintiff's conduct of those same procedures, and in strict compliance with those same instructions, resulted in no payments made to Plaintiff;

60. Steven van der Velden and Defendant ETCC knew that Plaintiff relied upon their false promises and misleading statements, and continued to work full time, and in full cooperation until his suspension despite substantial underpayment of wages and reimbursements then due and owing;

61. Steven van der Velden, as CEO of ETCC and ETNA instructed personnel to withhold or deny payments for wages and reimbursements for expenses, while deceitfully stating to Plaintiff that payment of past due amounts was being arranged;

62. Defendant ETCC, by and through its employees, falsely stated to Plaintiff that required payments had been made for his benefit, but had been withheld against ETCC's instructions;

63. Defendant ETNA, at the direction of Steven van der Velden entered into the APA, as well as the Agreement with Plaintiff with no intention of complying with its terms, or payment amounts promised to Plaintiff in those contracts;

64. Plaintiff reasonably relied on the deceitful, malicious, false and misleading statements of Defendants ETCC and ETNA, including its Steven van der Velden, its employees, agents and attorneys, who are a globally operated, New York Stock Exchange traded company, to his detriment and loss;

65. Defendants' intended that Plaintiff rely on their fraudulent actions and omissions, and intended to deceive and mislead Plaintiff. Defendants have not at any time made any attempt to pay promised back payments or amounts previously promised to be paid.

66. Plaintiff was damaged as the result of Defendant's actions and omissions in an amount in excess of $780,000.00.

**FOURTH CAUSE OF ACTION: DECEIT AND FRAUD IN THE INDUCEMENT**

67. The allegations of Paragraphs 1 through 66 are hereby incorporated herein by this reference, and each as if fully set forth herein.

68. The actions and omissions of Defendant ETNA, which was dominated and controlled by Defendant ETCC, and managed, dominated and controlled by the same CEO, was intentional and malicious in its actions and omissions. ETNA, in promising payments and entering into contractual agreements which ETCC did not, and never intended to comply, calculated to harm Plaintiff as well as others.

69. Both ETNA and ETCC, capitalizing on Plaintiff Brown's good faith, by making continued false promises and misrepresentations, prolonged and exacerbated the benefits of their wrongdoing.

70. The Defendants, having achieved profitability taken, utilized, converted, transitioned, integrated, studied, removed and otherwise utilized for their own purposes and benefits, the assets of Telnicity, and all without having paid any money for those assets as agreed. Defendant induced the former employees of Telnicity, expressly including the Plaintiff,

through fraudulent employment contracts, to assist Defendants' efforts to wrongfully take and secure those assets for Defendants own profit and benefit.

71. Plaintiff Brown relied on the promises of payments and false contractual provisions drafted by ETCC in his decision to enter into the Agreements and provide consulting services and intellectual property.

72. Plaintiff's reliance upon the calculated repeated, willful, calculated and intentional deceptions of both ETCC and ETNA, including knowing and intentionally issuing false promises of forthcoming and pending payments, and pending compliance with contractual requirements, was reasonable and an honest extension of Plaintiff's continuing good faith.

73. Defendant ETCC, through their officers, agents, employees and attorneys actively concealed their dishonest and deceitful intentions despite repeated requests and confrontations by Plaintiff. Further, ETCC, by and through its attorneys, demanded Plaintiff engage in false, improper and illegal conduct, and provide false testimony, in order to falsely deny and wrongfully conceal Defendants' misconduct with regard to other employees and contractors.  Further, as proof of the pattern of Defendants' improper practices, Defendant ETNA has already been found liable in one such case due to its identical failure and refusal to pay wages and compensation owed to another former employee.  That judgment remains unsatisfied to this date.

74. Defendants' actions and omissions constituting Deceit, and Fraud in the Inducement have harmed and damaged the Plaintiffs' in excess of $780,000.00.

**FIFTH CAUSE OF ACTION:  ILLEGALITY AND VIOLATION OF OKLAHOMA WAGE AND LABOR LAW**

75. The allegations of Paragraphs 1 through 74 are hereby incorporated herein by this reference, and each as if fully set forth herein.

76. Plaintiff performed labor for Defendant ETNA as a Consultant and employee;

77. Plaintiff has not been paid expense reimbursement, salary, fixed fee or commission in compliance with Oklahoma Law

78. Defendants actions and omissions constitute violations of applicable federal and state statutes, rules and regulations. Defendant's actions and omissions were wrongful and actionable as violation of Oklahoma Public Policy.

79. Plaintiff's were damaged as the result of Defendant's actions and omissions in an amount in excess of $780,000.

**SIXTH CAUSE OF ACTION: UNFAIR TRADE PRACTICES AND VIOLATION OF OKLAHOMA STATUES**

80. The allegations of Paragraphs 1 through 79 are hereby incorporated herein by this reference, and each as if fully set forth herein.

81. Defendants, in violation of 15 Okla. Stat. § 753, knowingly made false or misleading representations to Plaintiff, and induced Plaintiff to provide benefits and services in relation Defendants' purchase of the assets of Telnicity;

82. Defendant ETNA and ETCC each obtained, by misrepresentation, property and the proprietary and confidential business information of Plaintiff for wrongful use by Defendant;

83. Defendant ETCC through its wholly owned and controlled subsidiary, knowingly and intentionally violated 15 Okla.Stat. § 752 subparts 13, 14, and 16, and Plaintiff is entitled under Oklahoma Law to a private action for recovery.

84. Plaintiff were damaged as the result of Defendant's actions and omissions in an amount in excess of $780,000.00 and is entitled to statutory damages, attorney fees and costs.

**SEVENTH CAUSE OF ACTION: PUNANTIVE AND STATUTORY DAMAGES**

15

85. The allegations of Paragraphs 1 through 84 are hereby incorporated herein by this reference, and each as if fully set forth herein.

86. Both ETCC and ETNA have each greatly profited from the relationships and business information provided by and created for Defendants by Plaintiff Brown;

87. The Defendants, capitalizing on Plaintiff Brown's good faith, have prolonged and exacerbated the benefits of their wrongdoing.

88. The Defendants, having achieved profitability taken, transitioned, integrated, studied, removed and otherwise utilized for their own purposes and benefits, the assets of Telnicity, and all without having paid any money for those assets as agreed.  Defendant induced the former employees of Telnicity, expressly including the Plaintiff, through fraudulent employment contracts, to assist Defendants' efforts to wrongfully take and secure those assets for Defendants own profit and benefit.

89. Both Defendants were at all times fully aware of the benefits created by Plaintiff, and acted and continue to act to capitalize on its misconduct toward Plaintiff and others.

90. Both Defendants are and haven been brazen and aggressive in their knowledge of wrongdoing, and continue to act to harm Plaintiff and wrongfully withhold payments due and owing.

91. Defendant ETCC had at all times relevant controlled the books, records and conduct of ETNA.

92. ETCC and ETNA, in their acts and omissions, violated Oklahoma Law and Oklahoma Public Policy.

93. The Consultancy Agreement is a contract of adhesion, and contains a "penalty" provision expressly in violation of Oklahoma Statute 15 Okla. Stat. §213. *[Exhibit 1: Consultancy Agreement, "Penalty", page 5 of 6]*

94. The Plaintiff is entitled pursuant to Oklahoma Law to punitive damages as the result of the intentional and malicious conduct of the Defendants, or in the alternative, Defendants wanton and reckless disregard of the Plaintiffs rights.

**EIGHTH CAUSE OF ACTION:  BREACH OF FIDUCIARY DUTY**

95. The allegations of Paragraphs 1 through 94 are hereby incorporated herein by this reference, and each as if fully set forth herein.

96. Defendant ETNA, acting through its officers and directors has a fiduciary duty to employees and contractors.

97. Defendants created a relationship of faith and trust between Defendants and the principals of Telnicity by and through the APA, and the purchase of Telnicity's assets and operations.  Plaintiff was a principal and key person of Telnicity prior to the purchase.

98. ETNA, including their officers, employees, agents and attorneys conduct, acts and omissions constitute a breach of fiduciary duty;

99. Plaintiff Brown suffered actual damages, including loss compensation, lost of funds and assets paid towards the expenses of Defendants, and loss of commission promised to Plaintiff on assets stolen from Telnicity, but created, in whole or in part, by Plaintiff.

100. The Defendants directly benefited from their wrongful actions and improper omissions;

101. Plaintiff' was damaged as the result of Defendant's actions and omissions in an amount in excess of $10,000 including attorney fees and costs of the action.

**NINETH CAUSE OF ACTION:  CONVERSION**

102. The allegations of Paragraphs 1 through 101 are hereby incorporated herein by this reference, and each as if fully set forth herein.

103. Defendants by the actions and omissions of its officers, employees, agents, contractors and attorneys, held, diverted and converted property, funds and proceeds for the use of assets for which compensation was due and owing to Plaintiff;

104. Defendant, through their employees, officers, employees, contractors, agents and attorneys wrongfully obtained, utilized seized and interfered with the intellectual property and proprietary information of Plaintiff, and seized a personal computer containing personal files and information.

105. Plaintiff was directly damaged by the loss and theft;

106. Plaintiff was damaged as the result of Defendants' actions and omissions in an amount in excess of $780,000.00.

**TENTH CAUSE OF ACTION:  QUANTUM MERITUM/UNJUST ENRICHMENT**

107. The allegations of Paragraphs 1 through 106 are hereby incorporated herein by this reference, and each as if fully set forth herein.

108. Plaintiff argues in the alterative, that the Agreement is an instrument of fraud, is void, or is invalid on the basis of the failure of consideration;

109. Plaintiff' conferred  in good faith, and in reliance upon an invalid contract, its services and have received Plaintiff's months of services, and contributions to Defendant's business expenses;

110. Defendant knowingly, intentionally, and willing accepted the labor, efforts, contributions and benefits conferred by Plaintiff;

111. Defendant's have profited and benefited from the Plaintiff's efforts, labor and contributions of money paid for the expenses of Defendant;

112. Defendants prolonged, wrongfully induced and continued employment without pay or reimbursement is  unjust and inequitable under the principals of the laws of Oklahoma.

Defendants have willfully and intentionally refused to relinquish or surrender the assets or the fair value of efforts.

113. Plaintiff acted legally, in good faith and without guile, improper motive, or deceit. Plaintiff is entitled the fair value for its services, labor and debts incurred in reliance upon the Agreement, loss of use of its assets and loss of profits occasioned by Defendant's prolonged, wrongful and improper conduct;

114. Defendants utilized false promises, guile and deceit to prolong and induce Plaintiff to contribute personal assets to Defendant's expenses, and to continue work and efforts for the direct benefit of Defendant.

115. Defendants taking, use and continuing use and benefits constitute Unjust Enrichment and have harmed and damaged the Plaintiffs' in excess of $98,700 in payment for services and in excess of $185,000.00 for amounts paid for deposits, rent and business expenses paid on behalf of Defendant.

WHEREFORE, Plaintiffs prays this honorable Court grant them judgment against Defendant in the principal amount of in excess of SEVENTY FIVE THOUSAND DOLLARS plus interest at the contractual rate, all costs of collection including a reasonable attorney fee pursuant to 12 Okla. Stat. § 936, and such other relief as the Court deems just and equitable.

*Respectfully submitted:*

_____
John M. Gibson, OBA #16058
Attorney for Plaintiff.
13008 Amberwood Place
Edmond, OK 73013
(214) 783-7183
(972) 421-1885 (Facsimile)