## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STEPHEN BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-00902-PRW |
| | ) | |
| ELEPHANT TALK COMMUNICATIONS | ) | |
| CORPORATION, and | ) | |
| PARETEUM CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Plaintiff's Motion for Partial Summary Judgment and Brief in Support (Dkt. 37), Defendant Pareteum Corporation f/k/a Elephant Talk Communication Corporation's Motion for Summary Judgment and Brief in Support (Dkt. 32), Defendant Pareteum North America Corporation f/k/a Elephant Talk North America Corporation's Motion for Summary Judgment and Brief in Support (Dkt. 33), Defendants Elephant Talk North America Corporation and Elephant Talk Communications Corporation's Motion to Strike Plaintiff's Exhibits from his Motion for Partial Summary Judgment (Dkt. 36), and Defendants Elephant Talk North America Corporation and Elephant Talk Communications Corporation's Motion to Strike Plaintiff's Exhibits from his Responses to Defendants' Motions for Summary Judgment (Dkt. 41).

1

*Background*

In early 2013, Telnicity, LLC ("Telnicity"), Elephant Talk Communications Corp. ("ETCC"), Elephant Talk North America Corp. ("ETNA"), and others entered into the Asset Purchase Agreement ("APA"). The APA effectuated the transfer of Telnicity assets to ETNA. As is common with such acquisitions, to provide institutional continuity, the APA required Telnicity to deliver consulting agreements executed by certain key individuals. Stephen Brown was one such key individual.

Brown signed two related agreements: the Consultancy Agreement for a Definite Period of Time (the "Consultancy Agreement") and the Side Letter to the Consultancy Agreement for a Definite Period of Time (the "Side Letter" and, together with the Consultancy Agreement, the "Agreements"). Both the Consultancy Agreement and the Side Letter were, by their terms, between Elephant Talk North America Corp., as "Principal," and Stephen Brown, as "Consultant."

The Consultancy Agreement required Brown to "work full time and exclusively for the Principal or its affiliates."[1] For his efforts, Brown would be compensated $13,625.00 per month. The Side Letter, meanwhile, supplemented and, to the extent of any inconsistency, modified the Consultancy Agreement.[2] The Side Letter noted anew the "particular importance to Principal [Elephant Talk North America Corp.] . . . that Consultant [Brown] remain[] engaged . . . as a consultant and in any case in total for at

---

[1] Consultancy Agreement and Side Letter (Dkt. 37, Ex. 6) at 1.

[2] "In the event of an inconsistency between the APA, the Consultancy Agreement, or this Side Letter the terms of the Side Letter shall prevail . . . ." *Id.* at 7.

least five (5) years after [the] Closing Date." The Side Letter continued: "The Consultancy Agreement shall commence on [the] Closing Date and shall continue in full force and effect until at least 5 years thereafter unless deemed noncompliant."[3] "Should the Consultancy Agreement be terminated by the Principal for any reason other than (a) any serious or persistent committed breach of any of the obligations under the Consultancy Agreement by the Consultant or (b) non-performance, Principal will pay out the remaining term of the contract to consultant."[4]

While serving as "Consultant" to ETNA, Brown owned and operated a Chick-fil-A franchise. In a letter dated January 31, 2014, ETNA, through counsel, alleged that Brown's "association with Chick-[f]il-A as an Operator" was in "breach of provisions in [his] Consultancy Agreement,"[5] particularly the provision requiring him to "work full time and exclusively for the Principal or its affiliates." "Therefore, ETNA ha[d] initiated an investigation into the possibility that a serious or persistent breach of the Agreement has or is occurring because of [his] relationship with Chick-[f]il-A . . . ."[6] To that end, ETNA scheduled a fact-finding meeting for February 5, 2014, to which Brown was to bring a completed "Compliance Statement" and at which he could present any other documentation or information relating to his work for Chick-fil-A or ETNA.[7] In the

---

[3] *Id.*

[4] *Id.*

[5] Rubenstein Letter (Dkt. 37, Ex. 9) at 1.

[6] *Id.*

[7] *Id.*

meantime, Brown's "association with ETNA [wa]s suspended until resolution of this matter [wa]s complete."[8] To this point, Brown had not been paid the amount contemplated under the Agreements, and no payment issued thereafter.[9]

Brown sued Elephant Talk North America Corporation and Elephant Talk Communications Corporation in the District Court of Oklahoma County on July 20, 2018. On September 14, 2018, Defendants removed to this Court.

Plaintiff Brown filed his Amended Complaint (Dkt. 9) on November 1, 2018, asserting claims for breach of contract, intentional infliction of emotional distress, actual and constructive fraud, fraud in the inducement, violation of state labor law, violation of state consumer protection law, punitive and statutory damages, breach of fiduciary duty, conversion, and unjust enrichment. Subsequently, in the course of briefing the instant motions, he withdrew his claims for constructive fraud, violation of state labor law, violation of state consumer protection law, breach of fiduciary duty, conversion, and unjust enrichment.[10] Accordingly, the Court hereby dismisses those claims. As such, only his claims for breach of contract, intentional infliction of emotional distress, actual fraud, fraud in the inducement, and punitive and statutory damages remain.

---

[8] *Id.* at 2.

[9] Defendants make a variety of arguments justifying their nonpayment and recharacterizing the payment that was made. At bottom, though, they do not contest the fact that Brown was not paid the amount contemplated by the Agreements. *See* Statement of Undisputed Material Facts (Dkt. 37, Ex. 1) ¶¶ 14, 16; Defs.' Resp. and Obj. to Pl.'s Mot. for Partial Summ. J (Dkt. 38) at 15–17.

[10] *See* Pl. Brown's Resp. in Opp'n to Def. Elephant Talk North America's Mot. for Summ. J. and Br. in Supp. (Dkt. 39) at 13–14; Pl. Brown's Resp. in Opp'n to Def. Elephant Talk Communication Corporation's Mot. for Summ. J. and Br. in Supp. (Dkt. 40) at 9–10.

Now, Plaintiff Brown moves for summary judgment on his breach of contract and actual fraud claims, while Defendants move for summary judgment on all claims and move to strike certain evidence from consideration in deciding the instant motions for summary judgment.

## Discussion

### I. Motions to Strike

#### a. Background

At the outset, the Court must address what evidence it can consider in deciding the instant motions for summary judgment. Plaintiff Brown submitted a number of exhibits, affidavits, and deposition transcripts in support of his Motion for Partial Summary Judgment and Brief in Support (Dkt. 37), Response in Opposition to Defendant Elephant Talk North America's Motion for Summary Judgment and Brief in Support (Dkt. 39), and Response in Opposition to Defendant Elephant Talk Communication Corporation's Motion for Summary Judgment and Brief in Support (Dkt. 40). Defendants object to the bulk of these exhibits, affidavits, and deposition transcripts pursuant to Federal Rule of Civil Procedure 56(c)(2),[11] arguing that the evidence at issue should not be considered by the Court because it is not supported by admissible evidence or is untimely. The Court addresses these objections only to the extent necessary to dispose of the instant summary

---

[11] Federal Rule of Civil Procedure 56(c)(2) permits parties to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

judgment motions. To that end, the Court finds the following evidentiary material to which Defendants object necessary to the disposition of the summary judgment motions:

- Dane Gasio's Affidavit as it relates to the allegation that Plaintiff was instructed by Defendants to lease space for a domestic headquarters,[12] the allegation that the Agreements served as compensation for Plaintiff's past efforts,[13] and the allegation that Defendants failed to pay Plaintiff Brown in accordance with the Agreements.[14]

- The Payment Records and the Assorted Emails and Example Invoices as evidence that Defendants failed to pay Plaintiff Brown in accordance with the Agreements.[15]

*b. Legal Standard*

"At the summary judgment stage, evidence need not be submitted 'in a form that would be admissible at trial.'"[16] "Parties may, for example, submit affidavits in support of summary judgment, despite the fact that affidavits are often inadmissible at trial as hearsay, on the theory that the evidence may ultimately be presented at trial in an admissible form."[17] "Nonetheless, 'the content or substance of the evidence must be admissible.'"[18]

---

[12] Aff. of Dane Gasio (Dkt. 37, Ex. 2) ¶ 10; Aff. of Dane Gasio (Dkt. 39, Ex. 4) ¶ 10; Aff. of Dane Gasio (Dkt. 40, Ex. 4) ¶ 10.

[13] Aff. of Dane Gasio (Dkt. 37, Ex. 2) ¶¶ 12, 13, 18; Aff. of Dane Gasio (Dkt. 39, Ex. 4) ¶¶ 12, 13, 18; Aff. of Dane Gasio (Dkt. 40, Ex. 4) ¶¶ 12, 13, 18.

[14] Aff. of Dane Gasio (Dkt. 37, Ex. 2) ¶¶ 22, 24; Aff. of Dane Gasio (Dkt. 39, Ex. 4) ¶¶ 22, 24; Aff. of Dane Gasio (Dkt. 40, Ex. 4) ¶¶ 22, 24.

[15] Payment Records and Assorted Emails (Dkt. 37, Ex. 7).

[16] *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

[17] *Id.* (citing *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005)).

[18] *Id.* (quoting *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995)).

"Thus, for example, at summary judgment courts should disregard inadmissible hearsay statements contained in affidavits, as those statements could not be presented at trial in any form."[19] "The requirement that the substance of the evidence must be admissible is not only explicit in Rule 56, which provides that '[s]upporting and opposing affidavits shall . . . set forth such facts as would be admissible in evidence,' but also implicit in the court's role at the summary judgment stage."[20] "To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury."[21]

### c. Analysis

Defendants object to the Court's consideration of Dane Gasio's Affidavit as it relates to the allegation that Plaintiff was instructed by Defendants to lease space for a domestic headquarters[22] and the allegation that the Agreements served as compensation for his past efforts.[23] Defendants argue that these portions of Dane Gasio's Affidavit are irrelevant, impermissible parol evidence, and hearsay without an exception.[24] The Court

---

[19] *Id.* (citing *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1082 n. 5 (10th Cir. 1999)).

[20] *Id.* (internal citation omitted).

[21] *Id.* (citing *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1216 (10th Cir. 2004) (affirming summary judgment, in light of the available evidence, because "[j]ury verdicts may not be based on speculation or inadmissible evidence or be contrary to uncontested admissible evidence")).

[22] *See* Aff. of Dane Gasio (Dkt. 37, Ex. 2) ¶ 10; Aff. of Dane Gasio (Dkt. 39, Ex. 4) ¶ 10; Aff. of Dane Gasio (Dkt. 40, Ex. 4) ¶ 10.

[23] *See* Aff. of Dane Gasio (Dkt. 37, Ex. 2) ¶¶ 12, 13, 18; Aff. of Dane Gasio (Dkt. 39, Ex. 4) ¶¶ 12, 13, 18; Aff. of Dane Gasio (Dkt. 40, Ex. 4) ¶¶ 12, 13, 18.

[24] Defendants also lodge generic objections alleging that this evidence should not be considered because it is prejudicial and conclusory. Because Defendants fail to explain

finds that this evidence is properly considered in resolving the instant motions for summary judgment. First, this evidence is relevant to Plaintiff's fraudulent inducement claim. For instance, if Defendants misrepresented that they were reimbursing Plaintiff for the lease or compensating him for his past efforts through the Agreements, this evidence may support the fraudulent inducement claim.[25] Second, because this evidence is neither being presented nor considered to determine the terms of a contractual agreement, it is not parol evidence. Finally, as to the argument that this evidence is inadmissible hearsay, the Court is satisfied that Gasio can testify within the bounds of his personal knowledge as to these matters.

Defendants object to the Court's consideration of the Payment Records and the Assorted Emails and Example Invoices as evidence that Defendants failed to pay Plaintiff Brown in accordance with the Agreements.[26] Defendants argue that this evidence should not be considered because it is not authenticated. The Court finds that this evidence is properly considered in resolving the instant motions for summary judgment. The matter of

---

their reasoning and because the Court sees no obvious reason that this evidence should be excluded from consideration on those grounds, the Court does not address these objections.

[25] Fraud in the inducement is defined as a "misrepresentation as to the terms, quality or other aspects of a contractual relation, venture or other transaction that leads a person to agree to enter into the transaction with a false impression or understanding of the risk, duties or obligation she has undertaken." *Harkrider v. Posey*, 2000 OK 94, ¶ 11, 24 P.3d 821, 826–27.

[26] Payment Records and Assorted Emails (Dkt. 37, Ex. 7).

authentication is straightforward and can easily be done at trial by, for example, eliciting testimony that these records are what they are claimed to be.[27]

Defendants object to the Court's consideration of Dane Gasio's Affidavit as it relates to the Defendants' failure to pay Plaintiff Brown in accordance with the Agreements.[28] Defendants argue that this evidence is impermissible parol evidence and hearsay without an exception.[29] The Court finds that this evidence is properly considered in resolving the motions for summary judgment. To the former objection, this evidence is not parol evidence, introduced to supply meaning a contract. Rather, this evidence is presented to show a failure to perform in accordance with the plain language of the contract. To the latter objection, the Court is satisfied that Plaintiff will be able to proffer admissible evidence at trial on the subject. For example, Plaintiff could elicit this information during Dane Gasio's testimony.

### d. Conclusion

Contrary to Defendants' arguments, the portions of the exhibits and affidavits addressed above are appropriately considered in evaluating Plaintiff's Motion for Partial Summary Judgment and Brief in Support (Dkt. 37), Response in Opposition to Defendant Elephant Talk North America's Motion for Summary Judgment and Brief in Support (Dkt.

---

[27] *See* Fed. R. Civ. P. 901.

[28] Aff. of Dane Gasio (Dkt. 37, Ex. 2) ¶¶ 22, 24; Aff. of Dane Gasio (Dkt. 39, Ex. 4) ¶¶ 22, 24; Aff. of Dane Gasio (Dkt. 40, Ex. 4) ¶¶ 22, 24.

[29] Defendants also lodge generic objections alleging that this evidence should not be considered because it is prejudicial and conclusory. Because Defendants fail to explain their reasoning and because the Court finds no obvious reason that this evidence should be excluded from consideration on those grounds, the Court does not address these objections.

39), and Response in Opposition to Defendant Elephant Talk Communication Corporation's Motion for Summary Judgment and Brief in Support (Dkt. 40). Accordingly, the Court denies Defendants' Motions to Strike (Dkts. 36 & 41) as to these portions of the aforementioned exhibits and affidavits. The balance of Defendants' objections in their Motions to Strike (Dkts. 36 & 41) are unnecessary to the resolution of the motions for summary judgment and therefore moot.

## II. Motions for Summary Judgment

### a. Legal Standard

Federal Rule of Civil Procedure 56(a) requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the court does not weigh the evidence and determine the truth of the matter asserted, but determines only whether there is a genuine dispute for trial before the fact-finder.[30] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[31] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[32] A dispute is

---

[30] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[31] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[32] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

"genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[33]

If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[34] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts,"[35] or by theorizing a "plausible scenario" in support of its claims.[36] "Rather, 'the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"[37] If there is a genuine dispute as to some material fact, the district court must consider the evidence and

---

[33] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

[34] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322; *Beard v. Banks*, 548 U.S. 521, 529 (2006).

[35] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995)).

[36] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[37] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52; *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

all reasonable inferences from the evidence in the light most favorable to the nonmoving party.[38]

### b. Breach of Contract Claim

First, the Court addresses Plaintiff's breach of contract claim against Defendant ETCC arising from the Agreements.

The Court finds that Defendant ETCC's Motion for Summary Judgment as it relates to this claim should be granted because Defendant ETCC was not a party to the Agreements. To establish a claim for breach of contract, a plaintiff must establish, among other things, the formation of a contract.[39] In this case, both the Consultancy Agreement and Side Letter were, by their express terms, solely between Plaintiff, as "Consultant," and Defendant ETNA, as "Principal." There is no mention of Defendant ETCC. Thus, the face of the contract provides no evidence that a contract was formed between Plaintiff and Defendant ETCC.

Plaintiff counters that his negotiations with the CEO of ETNA and ETCC leading up to the signing of the Consultancy Agreement and Side Letter demonstrate that Defendant ETCC was, in fact, a party to the Agreements. But "where a contract is complete in itself and, as viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended. The intention of the parties cannot be determined

---

[38] *Scott*, 550 U.S. at 380; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Sylvia v. Wisler*, 875 F.3d 1307, 1328 (10th Cir. 2017).

[39] *See Wheeler's Meat Mkt., Inc. v. Travelers Cas. Ins. Co. of Am.*, No. CIV-17-523-M, 2018 WL 11184650, at *2 (W.D. Okla. Feb. 21, 2018) (citing *Dig. Design Grp., Inc. v. Info. Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843).

from the surrounding circumstances, but must be gathered from a four-corners' examination of the contractual instrument in question."[40] In this case, the Agreements contain integration clauses, each of which states expressly that those written agreements and "any attachments and/or addendums [thereto] shall embody all the terms of th[eir] [a]greement."[41] As such, the negotiations leading up to the signing of the Agreements cannot be considered to vary this plain language.[42] The Agreements, therefore, mean precisely what they say and no more: The Agreements were between Plaintiff and Defendant ETNA. Accordingly, Plaintiff cannot sustain a breach of contract claim pursuant to the Agreements against Defendant ETCC.

Next, the Court addresses two facets of Plaintiff's breach of contract claim against Defendant ETNA: the claim as it relates to damages for failure to pay the monthly consulting fee and the claim as it relates to damages for failure to reimburse for an earlier business loan.

As to the first facet, the Court finds that summary judgment is inappropriate because there is a genuine dispute of material fact as to whether Plaintiff or Defendant first breached the Agreements, thereby potentially relieving the other of performance. Specifically, there is a genuine dispute as to whether Plaintiff was in breach of the provision requiring him to

---

[40] *Id.*

[41] Consultancy Agreement and Side Letter (Dkt. 37, Ex. 6) at 6, 8.

[42] *See* Restatement (Second) of Contracts § 215 (1981) ("[W]here there is a binding agreement, either completely or partially integrated, evidence of prior or contemporaneous agreements or negotiations is not admissible in evidence to contradict a term of the writing.").

"work full time and exclusively for the Principal or its affiliates" given his continued operation of his chicken restaurant or whether Defendant ETNA was in breach for failing to pay Plaintiff even though he was fulfilling his obligation to work full-time, as his timesheets suggest. Accordingly, Plaintiff and Defendant ETNA's respective Motions for Summary Judgment are denied as to this facet of the breach of contract claim.

As to the second facet, relating to damages for failure to reimburse for an earlier business loan, the Court finds that summary judgment in favor of Defendant ETNA is appropriate. Defendant ETNA argues that Plaintiff cannot recover from it for the business loan because that loan was made to Telnicity. To that end, Defendant ETNA points to the deposition of Dane Gasio, which corroborates this assertion.[43] Plaintiff produces no evidence to the contrary and presents no legal argument that ETNA assumed that debt from Telnicity by entering into the Agreements. It is axiomatic, then, that Plaintiff cannot recover from Defendant ETNA for a debt owed by Telnicity. The Court therefore grants Defendant ETNA's Motion for Summary Judgment as to this portion of the breach of contract claim.

Because the Court finds there is a genuine dispute of material fact as to the predicate breach of contract claim, it does not reach the question of statutory damages.

---

[43] *See* Dep. Of Dane Ryan Gasio (Dkt. 33, Ex. 9) ¶ 27 ("Steven Brown had made loans to Telnicity prior to the APA.").

### c. Breach of the Implied Duty of Good Faith and Fair Dealing Claim

Plaintiff also seeks summary judgment on a claim for breach of the duty of good faith and fair dealing. The Court denies this portion of Plaintiff's Motion for Summary Judgment for several, independently sufficient reasons.

First, and most fundamentally, Plaintiff did not assert this cause of action in the Amended Complaint. If he wishes to pursue this claim, he should ask to amend his complaint.[44] Second, in cases involving "ordinary commercial contracts," like this one, "a breach of [the implied duty of good faith and fair dealing] merely results in damages for breach of contract, not independent tort liability."[45] Third, to qualify as one of the exceptional cases where a separate cause of action for breach of the implied duty of good faith and fair dealing may lie, there must be a "special relationship" between the parties.[46] Oklahoma courts have found such a "special relationship" in only very limited circumstances, most notably between an insurer and insured.[47] This action does not involve an insurance contract, and Plaintiff otherwise fails to demonstrate a "special relationship" between the Parties akin to that between an insurer and insured.

Accordingly, the Court denies Plaintiff's Motion for Partial Summary Judgment as to a claim for breach of the implied duty of good faith and fair dealing.

---

[44] *See Pater v. City of Casper*, 646 F.3d 1290, 1299 (10th Cir. 2011) ("An issue raised for the first time in a motion for summary judgment may properly be considered a request to amend the complaint, pursuant to Federal Rule of Civil Procedure 15.").

[45] *Wathor v. Mutual Assurance Adm'rs, Inc.*, 87 P.3d 559, 561 (Okla. 2004).

[46] *See id.* at 561–62.

[47] *Id.* at 561.

*d.  Intentional Infliction of Emotional Distress Claim*

The Court next addresses Plaintiff's claim for intentional infliction of emotional distress. According to the Amended Complaint, Defendants' failure to pay in accordance with the Consultancy Agreement, despite repeated promises that payment was forthcoming, and threat to "ruin" Plaintiff's Chick-fil-A franchise constitute extreme and outrageous behavior.[48] Defendants argue, in rebuttal, that the conduct at issue does not rise to the level of "extreme and outrageous" necessary to sustain a claim for intentional infliction of emotional distress.[49] The Court agrees with Defendants.

To establish a claim for intentional infliction of emotional distress under Oklahoma law, a plaintiff must establish, among other things, that "the defendant's conduct was extreme and outrageous."[50] The Oklahoma Supreme Court, quoting the Second Restatement of Torts, explains in practical terms:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"[51]

Because of the abstract nature of the harm and concomitant ease of accusation, trial courts have been instructed to act as a gatekeeper by "'determin[ing] whether the defendant's

---

[48] *Id.* ¶ 59.

[49] Am. Compl. (Dkt. 9) at 10–11.

[50] *Computer Publications, Inc. v. Welton*, 2002 OK 50, ¶ 7, 49 P.3d 732, 735.

[51] *Breeden v. League Servs. Corp.*, 1978 OK 27, 575 P.2d 1374, 1376 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

conduct may reasonably be regarded as *so extreme and outrageous* as to permit recovery . . . .'"[52]

While "extreme and outrageous conduct" eludes precise definition, "guidance can be found in cases in which courts have submitted defendants' conduct to the jury to determine whether it is extreme and outrageous."[53] These illustrative cases involve, for example, the surreptitious videotaping of a 16-year-old in various stages of undress, prolonged physical and mental abuse, sexual abuse, suicide in another's home, and the torture or malicious killing of another's pet.[54]

Even if taken as true, the conduct at issue in this case—the failure to pay in accordance with a contract and the unadorned threat to "ruin" an owner's chicken restaurant—falls short of "extreme and outrageous." Compared to the conduct at issue in the cases mentioned above, the conduct at issue here is of an entirely different nature and degree. Where those cases feature the surreptitious invasion of the most intimate privacy of a minor, prolonged physical and mental abuse, sexual abuse, death, and torture, this case involves failure to pay in accordance with a contract and a threat directed at a business venture. Under the "reaction of the average member of the community" test, this conduct is not "Outrageous!"

Because the conduct alleged in this case, even when taken as true, does not as a matter of law constitute "extreme and outrageous" behavior, the Court grants summary

---

[52] *Id*. at 1377–78.

[53] Restatement (Third) of Torts § 46.

[54] *Id*. cmt. d.

judgment in favor of Defendants on the claim for intentional infliction of emotional distress.

### e. Actual Fraud and Fraud in the Inducement Claims

Next, the Court turns to the Parties' respective arguments for summary judgment on the remaining fraud claims, for actual fraud and fraud in the inducement.

Plaintiff argues that summary judgment in his favor on the actual fraud claim is warranted. He asserts that "[t]he CEO of ETCC and ETNA . . . made a promise [to pay] with no intention of performing, and ETNA and ETCC misle[]d, through continuing excuses, partial payments and knowingly false statements, Plaintiff into continuing work with no actual prospect of being paid" and that "Brown continued to believe and rely on these statements that Steven Vander Velden knew were false."[55]

Defendant ETCC responds that the Court should grant summary judgment in its favor on the actual fraud claim because "Plaintiff has not set forth a material misrepresentation made by the Defendant ETCC."[56]

Defendant ETNA, meanwhile, argues for summary judgment in its favor on the actual fraud claim on the basis that "Plaintiff has failed to set forth specific representations of this Defendant that Plaintiff relied upon to his detriment."[57]

---

[55] Pl.'s Mot. for Partial Summ. J. and Br. in Supp. (Dkt. 37) at 12.

[56] Def. Pareteum Corp. f/k/a Elephant Talk Communication Corp.'s Mot. for Summ. J. and Br. in Supp. (Dkt. 33) at 10.

[57] Def. Pareteum North America Corp. f/k/a Elephant Talk North America Corp.'s Mot. for Summ. J. and Br. in Supp. (Dkt. 33) at 14.

Both Defendants move for summary judgment on the basis that fraud claims fail as a matter of law when they are not distinct from a breach of contract claim.

The Court finds that summary judgment in favor of Defendant ETNA is appropriate with respect to Plaintiff's actual fraud claim because his breach of contract and actual fraud claims are duplicative. Under Oklahoma law, to assert simultaneously a claim for fraud and a claim for breach of contract, the claims must be distinct.[58] To determine whether a breach of contract and fraud claim are sufficiently distinct, the courts look to whether the facts supporting, and the damages arising as a result of, each claim are different.[59] In this case, Plaintiff's breach of contract and actual fraud claims are based on the same facts and seek the same damages. A side-by-side comparison is illustrative. In support of his breach of contract claim, Plaintiff asserts that he worked for Defendants in accordance with the Agreements but was not compensated at the agreed-upon rate.[60] For that reason, Plaintiff seeks damages as provided by, and arising from, the Agreements.[61] Similarly, in support of his actual fraud claim, Plaintiff asserts that "for a period of twelve months, [neither] ETNA nor ETCC [] paid Plaintiff as agreed" "under Plaintiff's Contract" despite his "continued . . . work" for Defendants. And if that side-by-side comparison left any room for doubt, a later acknowledgment does not: Plaintiff asserts the fraud claim "in the

---

[58] *See Edwards v. Farmers Ins. Co.*, No. 08-CV-730-TCK-PJC, 2009 WL 4506218, at *5 (N.D. Okla. 2009).

[59] *See id.* (citing *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 675 (10th Cir. 2007)).

[60] *See* Pl.'s Mot. for Partial Summ. J. and Br. in Supp. (Dkt. 37) at 5–8.

[61] *See id.*

alternative" to the breach of contract claim.[62] Because Plaintiff's actual fraud claim against Defendant ETNA is, in essence, a repackaging of his breach of contract claim, the Court grants Defendant ETNA's Motion for Summary Judgment as to the actual fraud claim.[63]

Conversely, summary judgment is not appropriate with respect to the fraud in the inducement claim because Plaintiff's breach of contract and fraud in the inducement claims are sufficiently distinct. The claim for fraud in the inducement relies on allegations that Plaintiff "was led to agree to conduct work prior to the Consultancy Agreement and Side Agreement" and to "enter into a lease agreement," among others. These allegations relate to directives that predate and arose apart from the Agreements, thereby falling outside the scope of a breach of those contracts absent some other reason for their inclusion, and came at Plaintiff's expense, resulting in damages different than those arising from the breach of contract. Because Defendants fail to show that Plaintiff's breach of contract and fraud in the inducement claims are duplicative, their respective Motions for Summary Judgment are denied as to the fraud in the inducement claim.

The Court also finds that summary judgment as to Plaintiff's actual fraud claim against Defendant ETCC is inappropriate because there is at least one genuine dispute of material fact. Defendant ETCC hinges its argument on the assertion that "Plaintiff has not set forth a material misrepresentation made by the Defendant ETCC." But Plaintiff submits

---

[62] *Id.* at 11.

[63] The same cannot be said of Plaintiff's actual fraud claim against Defendant ETCC: The Court has granted summary judgment in favor of Defendant ETCC on the breach of contract claim, rendering the actual fraud claim nonduplicative.

deposition testimony from Stephen Brown that Van der Velden made promises to pay with no intention of doing so.[64] If Van der Velden made these statements in his capacity as CEO of ETCC, then ETCC may have made a material misrepresentation, thus defeating Defendant ETCC's argument for summary judgment. And assuming that Van der Velden did, in fact, make those statements, the question of whether he made them in his capacity as CEO of ETCC remains to be resolved, precluding summary judgment in favor of Plaintiff on this claim as well.

### f.  *Punitive Damages Claim*

Defendants also seek summary judgment on Plaintiff's claim for punitive damages. Because punitive damages are a remedy, not a cause of action,[65] the Court will evaluate whether the law precludes Plaintiff from seeking punitive damages.

Defendants argue that punitive damages are not available for a breach of contract claim, and therefore can only be sustained by one of Plaintiff's tort claims. Because his tort claims must fail, Defendants continue, Plaintiff's claim for punitive damages must fail as well. But as discussed above, Plaintiff's fraud in the inducement claim survives, providing a predicate tort claim upon which an award of punitive damages may rest. This argument, then, is moot.

---

[64] Stephen Brown Dep. Tr. (Dkt. 37, Ex. 4) at 6.

[65] The Tenth Circuit has observed that "[a] punitive damage claim is not an independent cause of action or issue separate from the balance of a plaintiff's case." *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1554 (10th Cir. 1991). Rather, "[i]t is part and parcel of a liability determination" that "does not have any independent being until a jury has decided" in the affirmative on a predicate cause of action. *Id.*

Alternatively, Defendants argue that even if one of Plaintiff's tort claims survives, there is no evidence of the sort of egregious conduct necessary to warrant punitive damages. The Court declines to grant summary judgment on the issue of punitive damages on this basis. Instead, "any ruling on the issue of punitive damages should be made after the [C]ourt has had an opportunity to hear all the evidence offered in support of [P]laintiff's claim."[66] Defendants "may revisit the issue at the Fed. R. Civ. P. 50 stage of the proceedings, if appropriate."[67]

### *Conclusion*

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment and Brief in Support (Dkt. 37), Defendants Elephant Talk North America Corporation and Elephant Talk Communications Corporation's Motion to Strike Plaintiff's Exhibits from his Motion for Partial Summary Judgment (Dkt. 36), and Defendants Elephant Talk North America Corporation and Elephant Talk Communications Corporation's Motion to Strike Plaintiff's Exhibits from his Responses to Defendants' Motions for Summary Judgment (Dkt. 41).

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant Pareteum Corporation f/k/a Elephant Talk Communication Corporation's Motion for Summary Judgment and Brief in Support (Dkt. 32) and Defendant Pareteum North America Corporation f/k/a Elephant Talk North America

---

[66] *Wirtz v. State Farm Mut. Auto. Ins. Co.*, No. CIV-08-1062-F, 2009 WL 2163617, at *8 (W.D. Okla. July 13, 2009).

[67] *Id.*

Corporation's Motion for Summary Judgment and Brief in Support (Dkt. 33), as set forth above.

      **IT IS SO ORDERED** this 7th day of December, 2020.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE